May it please the court, my name is Gia Kim, appearing on behalf of Appellant Anthony Castellanos. I'd like to reserve four minutes of my time for rebuttal. This is a case about the interplay between Batson and AEDPA. And here on habeas review, there are three threshold questions this court must resolve. First of all, which decision of the California courts is under review? Second, what is the standard of review applicable to that decision? And third, what consideration, if any, should this court give to the prosecutor's post hoc declaration giving new reasons for two of the challenged peremptory strikes here on habeas review? First, the decision under review. The parties agree on this one, that it's the California Court of Appeals' decision on direct appeal. And, you know, as has been long established since Yosemite Nunemaker, this court looks through to the last reasoned decision, which here is the California Court of Appeal. That's important here because although, of course, to the extent the California Court of Appeal adopts the trial court's decision, that comes into play, but here the California Court of Appeal went beyond what the trial court had done and offered new reasons that the prosecutor had not stated, neglected to mention a reason. For instance, juror number 3693, who is in seat numbers fives, the prosecutor stated one reason was the lack of children. The California Court of Appeal did not mention that. And the California Court of Appeal cited a couple cases in its analysis which were step one Batson cases. Turning to the next question, which is the standard of review applicable here, I acknowledge that this is a tricky question in this case. Whether it's de novo because whether it satisfies D1 and is de novo because the California Court of Appeal applied a standard that was contrary to Supreme Court law, or whether it should be reviewed as an unreasonable determination of the facts. And the reason it is so tricky here is because if you look at the California Court of Appeal's decision and the trial court's decision, which is itself opaque, it doesn't resemble what the Supreme Court has consistently held to be a proper Batson analysis. And, of course, the California Court of Appeal need not mention Batson in its analysis, but it still should go through the general framework of the step one prima facie case, step two determining whether the prosecutor's reasons are race neutral, and step three reaching the ultimate decision as to the genuineness of the proffered reasons. Therefore, this Court could treat this as a contrary to case under step one. All the cases cited are step one cases. Or it can treat this as a D2 unreasonable determination case, as in Green v. Lamarck. Kagan. I'm curious. So which one are you? Because looking from your briefs, it looks like you initially were saying it was step one, and maybe in the reply were saying maybe step two. I don't know if it was contrary to clearly established Federal law. I know that you argue that because the California Court of Appeals referenced Trevino, therefore it's a contrary to clearly established law, but a close reading of that doesn't look like they're referring to Trevino for the proposition that you have made. I mean, it's just a general statement of we defer to local courts a lot in reviewing these kind of issues. So are you still arguing that it's a D1? We are still arguing both, but I understand that. Which one are you arguing today? I understand. Well, turning to D2 for a second.  Let's do that. This strongly resembles the California Court of Appeals decision that was reviewed by this court in Green v. Lamarck, where it did not clearly reach step three. It just, you know, recited the facts as to what reasons were given and cited some cases about deference like Trevino here and stated basically that that was good enough. Just because I want to get to some really more pointed questions. Let's go the D2 route. Let's just say we're going to go that route. That opens up the record for us, or we have to look at what was just at the time? We can't look at the subsequent post hoc? No, Your Honor. If we're proceeding under D2, it is very clear that we can only look at, and this is by the terms of D2, in light of the evidence presented in the State court proceeding. So here it's an unusual situation because generally I would say it's the Petitioner trying to bring in new evidence in habeas, but here it's the State that is new evidence. So why don't we get to the facts in the case then? Yes. So what the California Court of Appeals did for juror 4968, the female juror, it said, one, and this is true, the prosecutor stated, I struck her because she had no children. There will be children testifying in this case, and I want someone who understands children. First of all, that did not apply to that juror. She did, in fact, have children. Second, three seated jurors also had no children. And the fourth was never, didn't answer that question and was never asked. And in Miller L. and cases following that. I don't, this is, I'm confused by what was going on here. It's not clear to me why the board said adult children. Do you know? I mean, can we, does anybody know that? And I'll ask your colleague over here in just a second. But why, why were they asking for adult children? I mean, because it seemed like it created a lot of confusion in the responses. My understanding is that it is getting to the occupations of those children. So, for instance, there were jurors here who had children who may have worked in law enforcement or lawyers or similar. And that is the question it is targeted at, the general question. The prosecutor here did not follow up with a more targeted question about whether children. Well, aside from following up, you've given your explanation of why they asked if there were adult children. Were there any questions about do you have children? No, Your Honor. Or do you have children who are not adults? No, Your Honor. A couple of jurors. Your only question was whether you have adult children? Yes. And that is the question on the board, a standard juror question. Okay. Thank you. Now, let's go back to Juror 49, 468. Yes. 4968. 4968. We look at what the California Court of Appeals did. I mean, because the prosecutor, when you look at his explanation, said, well, she didn't have any children, and I wanted people with children on the jury. Well, she did have children, and it looks like, depending on how you read it, she could have four children, she could have two adult children, two minor children. It's not clear. Anyhow, that explanation isn't as belied by the record, I think. In fact, he didn't ever ask her if she had little children, right? No. No, Your Honor. But the California Court of Appeals, in a footnote, curiously says, you know, it looks like he was the prosecutor was mistaken with Juror 3938, I believe. Yes, Your Honor. And if we get all these numbers right, it will be a miracle. But 3938, can we accept that? I mean, it looks like the magistrate judge in submitting the report and recommendation to the district court also said, oh, yeah, it looks like that was a mistake. And I think under the guise of Rice, you know, the case of Rice, but I'm just not sure if that's the case. No. No, Your Honor. I believe that we can accept that. There's two reasons why. First is the Batson reason, and, you know, in, for instance, Johnson v. California, the Supreme Court reversed a California decision about Batson, specifically because, you know, the Batson inquiry is detailed in that way because the whole idea is to get to the prosecutor's actual reasons. And the prosecutor, the Supreme Court said in Miller L-2, has to stand and fall on the reasons given. It's not an exercise in speculation for the courts to go through and find reasons that may have supported it, because the whole question is the actual reason. And does the Rice case not say it's okay to do it in this instance? In the Rice case, that was one of the facts. In the Rice case, there was a challenge as to a particular juror. The reason given was that she was young. That reason was factually true. The only question was whether the prosecutor's statement that another juror who was not young, he had struck this other juror, I think 19, and that juror was not young. Juror 16 was. So that was a they didn't go, it didn't undermine the whole reason for the strike. And in the Jamerson opinion, this Court said there's a difference between mistakes that just sort of enhance the basis for a strike that that reason is still valid versus a mistake that is, creates the only basis for a strike that otherwise wouldn't exist. And here, the statement about having no children, once you take that away, there's nothing left. So even if the California Court of Appeal was correct, that you could look at that from its inferences and its review of the record, there's still no other reason left in that opinion for justifying the strike. Well, according to the report recommendation accepted by the district court, there were two other reasons. And that's what I really want to get at. The other two reasons were there were seven out of the 12 jurors were Hispanic. And also, the prosecutor had eight strikes left. So if he wanted to, he could have, I mean, the inference is he could have struck more Hispanics, but he didn't. Yes, Your Honor. This Court has said that the first reason you mentioned in and of itself can't be a sufficient basis for an affirmative credibility finding. And I believe in this case, the second goes hand in hand with the first, the inference being, you know, there were this number of Hispanic jurors on the jury. The prosecutor had strikes left and could have struck some of them. You know, it's important to note here that there were a number of Hispanic jurors in the jury box to begin with. And, you know, the fact that all the strikes weren't used, I feel, can't be the basis when there's nothing else in the record. And I believe this is the essence of an unreasonable determination of facts saying strongly suggesting that this reason given, the no children, was factually inaccurate and there's no other reason to take that place and then falling back on the makeup of the jury. And is there any cases out there regarding that? Term of remarshal is one in cases following that saying even though there were African American jurors on the seat who are seated on the panel, that can't be enough. Well, no, I'm talking about, and the remaining strikes, does that not add a separate factor? No, Your Honor. I don't believe so. But here I believe it's part and parcel of the makeup of the final jury. And also, Your Honor, in Miller L., the Supreme Court said that, you know, what happens kind of after the Batson challenge, you know, has to be taken with a grain of salt as to, you know, once this challenge has happened, in Miller L. it was getting late for the prosecutor to accept minority jurors, in that case African American jurors. I know you wanted to save time for rebuttal, but I do want to ask you a question, so I'll give you your two minutes that you have left. But on the other juror, 3693. Yes. Was there any reason given other than that he said that the prosecutor said he saw the juror, the prospective juror, shaking his head, and that's why he asked him about shaking his head? The other reason was no children. No children. Which we have submitted as pretextual given the three other jurors who had no children and were seated, and the failure to ask questions on that point. Is it true that the record does not reflect that he, prosecutor, asked this juror about shaking his head? There was a point that I discovered in the record where the prosecutor asked, I can point you to it. At ER 109, is everyone asked shaking their head no? Sir, no. It's unclear who he was speaking about, but there is an instance of perhaps head  There's another juror, juror number 7A, I believe, 3531, who is a woman who also failed to give a yes or no answer. But that is clearly a different juror. Maybe this was in the post hoc statement, but isn't there some confusion regarding 3693 with 4968, that she was the one who didn't respond to the instructions or didn't answer the questions in the record? No, Your Honor. I believe those are different. Oh, 4968, this was in the declaration. The reason given for her ability not to file directions was that she failed to respond to her badge number on the first try. So the prosecutor did say that in the declaration. But that's in the declaration. Yes, that is in the declaration. And there are other jurors who had similar. So just to be clear, on 3693, did he not, or I don't know if it was he or she, did 3693 not respond when called upon? Does the record support that? Is it contradictory? He did respond, I believe. I believe the prosecutor was not clear as to what he meant about not following directions in the beginning. The trial, he did not give, I believe, an answer to the occupation question as he went along, which several other jurors also skipped as to perhaps spouses or adult children's occupations. And then the trial court went back. But that doesn't meaningfully distinguish him. And the Respondent, the Warden, has said, well, none of those other jurors also had no children. However, in Miller L., the Supreme Court made clear that jurors don't have to be cookie-cutters and, you know, similarly situated on every axis. And I know the time is short, but I did want to ask you a question on Murray v. Shiro, and does that change our analysis here with respect to AEDPA review? I don't believe so. I know Murray, in that case, the panel flagged some possible tension between the prior decision in Taylor v. Maddox and some of the Supreme Court's statements in subsequent cases. But under Taylor, under a D-2 challenge, we still proceed, you know, this Court still proceeds under D-2 alone and not D-2 and the standard in E-1. Also, I think in this case, when the nature of the unreasonable determination of facts is that there was no reason given and that both the trial court and California court of appeal affirmed on the basis where there was absolutely no reason given would satisfy E-1 as well. And I have not seen any cases that distinguish. The difference in this case between those standards is not meaningful, I'd argue. Thank you. Good morning, Your Honors. Deputy Attorney General Scott Tarl for the Respondent. As another thing that was stated in the Murray v. Shiro case was, the most important of the three stages in a Batson analysis is the third stage, because that's when the Court must determine whether Petitioner has met his burden of showing that the Supreme Court found that the prosecutor actually dismissed jurors because of their race, purposeful discrimination. That is the bottom line. Regardless of whether a prima facie case was shown, regardless of whether the prosecutor may have been flustered, whether the prosecutor may have stated the wrong reasons by getting jurors mixed up, whether the prosecutor may have omitted to state reasons, the bottom line is that Batson is a test to determine whether a prosecutor is deliberately using race as the basis for dismissing jurors. And here, each court, to handle the case, the district court, the California Court of Appeal, and the trial judge, all reached the same conclusion about that bottom line. This simply wasn't a case of intentional discrimination against Hispanics. A jury which included seven Hispanic jurors, convicted, appellant, and a very notable fact, the record, including the DMV photos which were lodged, bears out that at each one of these four peremptory challenges at issue, at the time of each one of them, from six to eight Hispanic jurors were in the 12-person jury box. The first strike, there were six. The second strike and the third strike, there were seven. The fourth strike, there were eight. Had the prosecutor in this case simply drawn the names of jurors out of a hat at random, the odds were even on the first and better than even on all the others that he would have drawn the name of a Hispanic juror in this case. The other factors abound in the record. If we're looking at Stage 3, which is the ultimate determiner here, the majority of the witnesses, of the prosecution witnesses in this case, including the key witness, the child who was there at the time of the shooting, are Hispanic. The detective was Hispanic. There is no apparent reason that even a mildly racist prosecutor, which I submit we do not have here, would have been deliberately out to strike Hispanic jurors on this record. And as Your Honor, as Judge Murguia pointed out, the prosecutor had several remaining strikes left over when he accepted the panel. Opposing counsel, appellant's counsel, pointed out that under Miller L., sometimes what happens after the Batson motion is suspect because the prosecutor has already been caught supposedly with his hand in the cookie jar. Here, nothing was different. The very next strike that the prosecutor issued was a Hispanic juror. And the reason is this was a predominantly, overwhelmingly Hispanic veneer. At my count, it was 25 out of 60. That's a large percentage. But as noted, the jury box itself was highly representative of Hispanic jurors. If we take each of the jurors at issue, juror number, excuse me, the third jurors or the second juror at issue here, 3693, the one that Judge Reinhart was asking about, the prosecutor's stated reasons weren't only about shaking his head. It was about paying attention in general. And if I – if you look at the voir dire transcript, which I have right in front of me, of that juror, it overwhelmingly bears that out. But regardless, if this Court or any Court looking at this were to look at it and honestly believe that this prosecutor's reasons for dismissing that juror was because he was racist against Hispanics or because he wanted Hispanics off the jury, it would simply be implausible given the fact that he left. So why did he say that his reason was that he didn't have children? Juror number 3693, he did not. Or at least he did not have adult children. That's all that we have as a proxy for children, unfortunately, in this record. Okay. Go on, Your Honor. Adult children, he said he did because people who did or didn't have adult children. What he said when he was talking about another juror, and I would submit it's clearly – it was clearly about a white female juror, juror 3938, although it didn't come out that way, was that he was going to – that he preferred jurors that had children because a key witness was going to be a child. But he didn't ask a question, do you have children? Because he was – well, he was using as a proxy. This is what I don't understand about the whole children business. If he said he preferred jurors who had children, is that what he wanted? He said that at one point for his reasons for striking a juror who he apparently believed was the white juror, juror number three. Well, whoever it was, his explanation sometimes when people were stricken was that he wanted jurors who had children, is that right? But that wasn't his explanation really for any of the four jurors at issue here. Well, I asked you about this one. This one, part of his explanation, 3693, was that she didn't have children or he didn't have children. Wasn't that part of his explanation? The way he phrased it, he primarily focused on lack of attention. No, I'm not asking what he primarily focused on. Just answer the question. Didn't he say that a reason was that he didn't have children? It's not clear that he said that was the reason. He said he didn't have children also, but that's not what I was relying on. Then why did he say it if it had nothing to do? What was he answering when he said, by the way, I just want you to know he didn't have children, or wasn't that part of his explanation for the challenge? He was throwing that in also, Your Honor. Throwing it in. What does that mean? Was it part of his explanation for why he challenged him? It was part. It was a very minor part according to what the prosecutor was saying. Based on his post hoc explanation or based at the time? No, that was at the time. I know. That's why I'm asking. It's confounding to me, actually, that if he, because he says it more than once, though, the prosecutor, that the reason he's striking folks is because they didn't have children and he wanted people who had children because, and he said, there's children witnesses or victims. I don't remember exactly how that works. It was a witness. It was a child in the room when the victim was shot. Right. And so, one, why doesn't he just ask, do you have children? This whole, why do you ask for adult children? And then there's a lot of different responses from the jurors, some of them who included their young children and not just their adult And then you have the prosecutor saying, though, more than once, oh, because he didn't have, you know, small children. And then sometimes it's belied by the record. It could be that he was confused according to, you know, the magistrate judge's review in the Court of Appeals for California. But I'm just trying to figure out what do we do with that? Because otherwise, if we have to look at what was stated on the record, it doesn't make sense. And I think the law, I mean, you're right in terms of VATS. It says, you know, step three and the principal inquiry is the prosecutor's reason and can it be believed or should it be believed. And credibility, I think, can be measured by, among other factors, the prosecutor's demeanor, by how reasonable or how improbable the explanations are, and by whether the proper rationale had some basis or accepted trial strategy. Well, if you look at that, I don't get the trial strategy for leaving some people with children and taking off other people with children. And if you look at the comparative juror analysis for both of these two, it's hard to make sense of it. Well, Your Honors, first of all, there's a lot of parts in this question. We don't know why he didn't ask during General Vordier about children, but I do know that Vordier is limited and he had his priorities and it might not have been such a priority when he wanted to, first of all, deal with people that had connections with gangs, which was a subject. But I would ask. This is a case in which I believe it was a 12 or 13-year-old victim was killed. I don't know the age of the victim, but the witness was 11. And the younger brother was the witness. The younger brother was 11, so I don't know the age of the victim. He was 12 or 13. And you're going to say that that wasn't important, that that wouldn't have been highlighted at the outset? I mean, it seems rather remarkable that what's up on the board is adult children and it didn't help in terms of making this record or supporting the prosecution. What's up on the board could be the standard preprinted poster that that courtroom always has. Regardless, I would say. Should we take that into effect then? I mean, do we accept that? I would say that regardless, the ultimate question, and I would politely correct the Court on what Stage 3 is about, it's not about only about the credibility of the prosecutor's stated reasons. That's an important part of it. But it's about whether the Petitioner has shown purposeful discrimination. And if you. I don't accept that. Right. And if you believe, well, the prosecutor, I don't understand why he's mentioning children about juror number 3693 when he's not asking about it. But ultimately, you have to believe that he is doing that as a subterfuge because he wants that juror off because of his race. And unless that is the showing. Well, I mean, or we look to see if it was a trial strategy. I mean, we look to see if that's a legitimate, neutral reason. And all the inconsistencies with respect to that issue, you know, makes it hard to follow the trial strategy on that or his reasoning on all of that. Whether it was a trial strategy or whether it was a trial strategy, excuse me, tragedy. Excuse me. I'm going to re-say that. A trial strategy that nobody can figure out or whether it's a very logical one, it's still about race in this case. That's the only thing that a Watson motion should be about. And also. And that's not the only thing here, though, because when he says it, he's saying it about a different juror. The other juror he's saying about, I would like to lay out the facts about why it's clear he was referring to a white juror and not any of the jurors at issue here, which means that comparative analysis on that basis would be meaningless. Juror number 3938 was juror number 3, seated right next to juror number 2. He was, she was the very next juror that the prosecutor struck. Both of these jurors had non-Hispanic last names. Juror number 4968's last name was Thorn. I can give out just the last name without revealing too much confidential. That was the Hispanic juror who was the first one at issue who was struck. This is sometime later during jury selection process. He's looking through his notes. He's talking about the next juror that he struck after that first juror, and he thinks that juror is white. When he's speaking on the record and giving his reasons at the time, not post hoc, he's saying he's talking about a white juror. That's what he said. I've seen the DMV photos. But the judge says to him, no, it's not a white juror, it's a Hispanic juror. And he goes, well, and then he offers reasons. Then he's not sure, I think, what, which jury he's talking about. And how far do we go? And I just, what's the case law? And I understand what you're saying. I mean, that, oh, he was probably talking about 39. Why wasn't he, you know, he could have, I mean, in the future, do we say, oh, he was probably talking about this other jury. Let's try to figure out exactly what the prosecutor was doing. How far do we go, and what's the case law to support that? I mean, I saw that the California Court of Appeals dropped a footnote. It just said, hey, it was a mistake. And then the magistrate judge in the report and recommendation, you know, said, oh, he was probably talking about this. But I'm just trying to figure out how, isn't that speculation? And are we able to go that far? I would like to address that, because you mentioned that with opposing counsel, whether that is one of those ad hoc calculations that supposedly shouldn't be made at this stage in a Wheeler motion. That's, it's not an ad hoc reason for why the prosecutor struck the juror. It is a reason, it is a reason for why the prosecutor may have been confused in his notes. And that's a totally different thing. And that, it's not speculation. It's drawn from some very good clues in the record, especially when he states that's a white juror, and then the one that he goes on to describe happens to be true of the juror that was the very next one that he struck who was a white juror. But ultimately, the reason was that they didn't have kids. And he never asked, you know, did you have young children? All he knows is that they didn't have adult children. And then he didn't ask that of everybody. What do we do with that? But if that were pretextual, that would have been a pretextual reason for why he struck the white juror. And that's not what's at issue here. The only other juror who that even comes up with at all is juror number 3693, the one who was inattentive. And I'd like to just really quickly, while I have a few seconds, talk about the voir dire of him. When he was called into the box, he gave his name and he was told don't give his name. And I believe he might have done that again. Then he was totally unresponsive when they asked him to answer any of the questions. Then he had to be prompted again. Then he asked what his occupation was. I work in sales. Then he asked what his wife's occupation was. And he again said, I work in sales, and had to be reminded again, no, we're talking about the wife. The district court, not only the prosecutor or the trial court, found on this record no other juror compared to how the difficulty he had in following instructions. I would submit under the totality of the circumstances in this case that regardless of what the reasons were and whether or not they made strategic sense, they were not racist reasons. This prosecutor did not strike any of these jurors based on their race.  Thank you, counsel. Just two quick points. First, on the asking about children, no children, it's important to note that this, on the prosecutor's part at least, was a pretty freewheeling voir dire. It was not a case like in Jamerson where the parties did not ask questions. The prosecutor asked about television shows. The prosecutor asked many questions during voir dire. Also, the statement about the no children, this was a reason he mentioned twice. Whether it was, you know, because he was confused as to the notes, this was still one of the reasons that he stated contemporaneously, and that is what this Court must look to as evidence of pretext. And further, on the point about the makeup of, you know, the jury box at all times, it's clear under Supreme Court law that, you know, one strike for a racially discriminatory reason violates equal protection. And, you know, there shouldn't have been, certainly there are cases, there are racially charged cases where, you know, the credibility or the reasons may be even stronger. However, there's no carve-out for intraracial crimes. There's no carve-out for crimes occurring in heavily minority Hispanic communities. The question isn't only one of these structures. Sympathy for a Hispanic juror, you know, the impermissible stereotyping can also go to perhaps they're perceived as defendant-friendly. Perhaps they're believed to have gang affiliations. And the reasons for having bats in go not only to the defendant, but also to the structure and the community at large. How about 3693? What's your response to what the Assistant Attorney General said about that? He clearly said that one of the reasons was that he did not have children. And that reason has been shown to be pretextual through comparative juror analysis. The California court of appeal didn't conduct that. They weren't required to conduct that exact analysis.  And I mean, it's very clear here that three jurors had no children. And one of the jurors was not asked. What about the other part of 3693 about the shaking the head or the incompetence of the juror in general? I mean, we've pointed to in the briefs other jurors who have had similar, if not worse, problems going through the directions, following the questions in order. And, you know, the fact that one, the no children reason is pretextual, and Miller L. casts doubt, again, on the other rationales given. And then on 4968 and the Assistant Attorney General saying that, well, it's just he's confused about his notes. So we can look at that as just being confused about his notes. Do we just accept that? No, Your Honor. I mean, again, this is what the Attorney General is saying at this point. But it's not for courts to speculate as to that. This is not a case like Aleman where the mistake was acknowledged at the voir dire. The prosecutor said, oh, I made a mistake. That was taken as part of the Batson inquiry, although it happened the day after. Here, no one is, the prosecutor, we're not looking at this declaration under D2, but still the prosecutor has not said he made a mistake. He just says my primary reason was this failure to respond to the badge number on the first try. So, again, this is exactly what the Supreme Court said not to do in Johnson v. California, and the California Court of Appeal persisted in doing it in Mr. Castellanos' case. Thank you. Thank you, Counsel. The case is directed to be submitted.
judges: REINHARDT, NOONAN, MURGUIA